UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                                    Case No.  8:07-cr-322-T-23TGW
                                                                 8:09-cv-1043-T-23TGW
ROBERTO FERRO
_____/

# O R D E R

Ferro's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the

validity of his conviction for conspiracy to manufacture and possess one hundred or

more marijuana plants, for which offense Ferro serves sixty months.  The United

States offers no challenge to the timeliness of the motion to vacate.  Ferro alleges that

his plea was involuntary because his counsel misadvised him about the sentence the

court would impose.  The motion to vacate lacks merit.

# FACTS[*]

In 2007 Ferro and several co-defendants conspired to manufacture and possess

with the intent to distribute one hundred or more marijuana plants in Pasco County,

Florida.  The marijuana was grown inside "grow houses" owned by Ferro and his

wife and at additional properties owned by the co-defendants.  To grow the

marijuana indoors, the properties were outfitted at one time or another with elaborate

_____

[*] This summary of the facts derives from the plea agreement.  (Doc.129).

electrical, irrigation, cooling, and insulating systems.  Also, electric power was illegally diverted from the Withlacoochee River Electric Company, in an amount of $48,493.41, to grow the marijuana.  Ferro and the co-defendants assisted each other in operating the several  "grow houses."

Search warrants were executed at two of the properties, at which locations agents seized more than 150 mature marijuana plants.  After receiving his *Miranda* warnings, Ferro admitted that he had been growing marijuana with the co-defendants.  Ferro stated that the grow cycle for the marijuana plants was 120 days and that a distributer paid $1,000 per plant.

## DISCUSSION

The only ground in the motion to vacate alleges that Ferro pleaded guilty based on the erroneous advise of his attorney that he would qualify for the "safety valve" at sentencing.  Instead, Ferro's request for the "safety valve" was rejected and he was sentenced to the statutory mandatory minimum sentence of sixty months.

Ferro alleges that his guilty plea is involuntary because a "safety valve" sentence was not imposed.  Ferro negotiated a plea agreement (Doc. 129 in 8:07-cr-322-T-23TGW), which specifically states that Ferro "expressly waives the right to appeal defendant's sentence or to challenge it collaterally . . . ."  A valid appeal waiver precludes an ineffective assistance of counsel challenge to the sentence. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.) ("[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement,

precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing."), *cert. denied*, 546 U.S. 902 (2005).  But a valid appeal waiver precludes no ineffective assistance claim that challenges the validity of the plea or the plea agreement.  *Cowart v. United States*, 139 Fed. App'x 206, 207-08 (11th Cir. 2005) (holding that a claim that challenges the validity of the guilty plea or the appeal waiver, and not the sentence, is not precluded by a sentence-appeal waiver), *citing United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004)).  Because Ferro's allegation challenges the voluntariness of his plea, the claim of ineffective assistance of counsel is not precluded by the waiver of his right to collaterally challenge his conviction in the present motion to vacate.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Ferro claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This

> requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Ferro must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." 466 U.S. at 691-92. To meet this burden, Ferro must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Because Ferro pleaded guilty, "counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Ferro's allegation that his counsel promised him a "safety valve" sentence is refuted by his representations to the magistrate judge when he pleaded guilty, such as the following (Transcript of Plea Hearing, Exhibit 109 at 9):

> The Court:  Did anyone promise you anything in exchange for th[e collateral challenge] waiver other than what's in the plea agreement?
>
> Ferro:  No, your Honor.

The magistrate judge also ensured that Ferro understood that a "safety valve" sentence was not automatic, but that Ferro would have to both qualify for it and cooperate sufficiently to earn it (Transcript of Plea Hearing, Exhibit 109 at 16-17):

> The Court:  There's also the so-called "safety valve" provision in [the] plea agreement.  This provision allows the judge to sentence you below the statutory mandatory minimum of five years that would otherwise

apply in your case.  This agreement, however, cannot be used unless you meet the criteria for "safety valve" protection.  That criteria is set forth in 18 U.S.C. 3553.  For the Court to even consider a sentence below the statutory mandatory minimum under this provision, it must make the following findings . . . .  And not later than the date of sentencing, you must completely disclose and truthfully disclose all of the facts that you are aware of concerning the underlying offense.  Do you understand the requirements to be considered for "safety valve" protection?

Ferro:  Yes, your Honor.

The magistrate judge further cautioned Ferro that he could earn the benefits of a reduced sentence only if he fully and truthfully cooperated with government agents (Transcript of Plea Hearing, Exhibit 109 at 17-19):

Now you have also agreed to cooperate with the Government in its investigation and prosecution of other people about whom you may have relevant information.  You have an obligation to give full and complete disclosure as part of that duty to cooperate.  If you fail to give full disclosure, you can lose the benefits of the plea agreement.  If you give false disclosure, you can be charged with additional offenses and lose the benefits of the plea agreement.

Ferro failed to qualify for the "safety valve" because he failed to completely and truthfully disclose all of the facts concerning the underlying offense.  Specifically, when confronted with the impossibility of paying his monthly mortgage obligations based on his asserted income, "Mr. Ferro was unwilling and unable to provide an adequate response." (Transcript of Plea Hearing, Exhibit 109 at 16)

The record shows that Ferro understood both that he could possibly avoid the mandatory minimum sentence if he qualified for a "safety valve" sentence and that he had to completely and truthfully cooperate to earn the reduced sentence.  At sentencing trial counsel's objection to Ferro's not qualifying for a "safety valve"

sentence was rejected.  (Transcript of Plea Hearing, Exhibit 109 at 18)  Ferro's guilty

plea was not involuntary because trial counsel allegedly guaranteed that he would

receive a "safety valve" sentence.  Ferro's failure to completely and fully cooperate is

the reason he did not receive a "safety valve" sentence.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is

**DENIED**.  The clerk shall enter a judgment against Ferro and close this case.

**CERTIFICATE OF APPEALABILITY**
**AND**
**LEAVE TO APPEAL IN FORMA PAUPERIS**

Ferro is not entitled to a certificate of appealability ("COA").  A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue

a COA.  Section 2253(c)(2) limits the issuing of a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right."  To merit a

certificate of appealability, Ferro must show that reasonable jurists would find

debatable both (1) the merits of the underlying claims and (2) the procedural issues he

seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478

(2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Ferro fails to

show that reasonable jurists would debate either the merits of the claims or the

procedural issues, Ferro cannot meet *Slack*'s prejudice requirement.  529 U.S. at 484.

Finally, Ferro is not entitled to appeal *in forma pauperis* because he is not entitled to a

certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**.  Leave to proceed *in forma pauperis* on appeal is **DENIED**.  Ferro must pay the full $455 appellate filing fee without installments unless the circuit court allows Ferro to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on September 21, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE